Fredericka Wagner, *et al.*,

      Plaintiffs,

v.

                          **Case No. 2:08-CV-00431**
                          **JUDGE SMITH**
                          **Magistrate Judge Kemp**

Circle W. Mastiffs, *et al.*,

      Defendants.


Craig W. Williamson,

      Plaintiff,

v.

                          **Case No. 2:09-CV-00172**
                          **JUDGE SMITH**
                          **Magistrate Judge Kemp**

American Mastiff Breeders
Council, *et al.*,

      Defendants.


**OPINION AND ORDER**

      Plaintiffs Fredericka Wagner ("Wagner"), Flying W Farms ("Flying W"), American Mastiff

Breeders Council, Connie Hammond d/b/a Sycamore Creek Kennels, Diane St. Marten d/b/a

Hidden Acres Farm, Billy & Sandy Berger d/b/a American Mastiff, Cameran Pridmore d/b/a

Capell Creek Ranch and Kennels, Jim & Sandy Taylor d/b/a Deepwood Acres American Mastiffs,

Kerry Mikalchus d/b/a Lazy M American Mastiffs, Tammy Venkler d/b/a Mystic American

Mastiffs, and Keven and Melanie Ware d/b/a Orion Farms (collectively the "Wagner Plaintiffs") bring this action for violation of the Lanham Act, 15 U.S.C. §§ 1117-1125, against Defendants Circle W Mastiffs and Jennifer and Craig Williamson (collectively "Circle W"). Defendants Circle W counterclaim against Wagner and Flying W (collectively "Flying W") for breach of contract, breach of the duty of good faith and fair dealing, fraudulent and negligent misrepresentation, implied and equitable indemnity, and contribution.

This action asserts a federal claim; therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. In addition, this Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367. Counterclaimant Circle W and Counterclaim Defendant Flying W briefed this Court on the motion to dismiss Defendants' counterclaims, and this motion is now ripe for review (Doc. 29). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Counterclaim Defendants' motion to dismiss the counterclaims (Doc. 29).

## I.   BACKGROUND

This case is one of two consolidated cases involving the sale of American Mastiff puppies. In his amended complaint filed in Case No. 2:09-cv-172,[1] Mr. Williamson, the owner of Circle W Mastiffs, a Nevada sole proprietorship, raises antitrust and various other claims arising from the Wagner Plaintiffs' alleged price fixing in connection with the sale of puppies.  According to Mr.

---

[1]The original complaint was filed in Nevada, slightly more than one month after the Lanham Act case was filed in this Court.  All of the defendants in that case moved to dismiss or transfer venue to the Southern District of Ohio, and that motion was recently granted.  The transferred case is now case No. 2:09-cv-172 (S.D. Ohio).  After the Nevada case was transferred here, the Wagner Plaintiffs moved to consolidate the two cases.  The Court granted the motion to consolidate, denying all other motions (Doc. 24).

Williamson, his refusal to participate in the price fixing scheme has resulted in his exclusion from the American Mastiff Breeding Club ("AMBC") and his inability to purchase new breeding stock. The named defendants in that case, which included the AMBC and its member breeders, have moved to dismiss the amended complaint on grounds that Mr. Williamson has failed to plead facts sufficient to support his claims.

This Lanham Act case was filed in this Court on May 6, 2008 by the Wagner Plaintiffs against Circle W. The Wagner Plaintiffs have alleged the following facts in the Complaint. Ms. Wagner and Flying W Farms created the American Mastiff dog breed. Flying W is an Ohio corporation. The Wagner Plaintiffs allege that Circle W, without privilege to do so, has taken various actions which have diluted the value of the American Mastiff breed and brand. As set forth in the Complaint, the American Mastiff is a recognized dog breed registered with the Continental Kennel Club. (*See* Compl. ¶¶ 1-2). The Complaint alleges that Circle W has advertised in interstate commerce and sold dogs claimed to be American Mastiffs of the breed created by Ms. Wagner and Flying W Farms when, in fact, these dogs are not American Mastiffs. (*Id*. at ¶ 6). Specifically, the Complaint asserts that Circle W has been selling dogs without a black mask in direct contravention of the breed standard set by the AMBC. (*Id*. at ¶ 7). Further, the Complaint alleges that the Circle W maintains a website which falsely advertises for sale dogs that are not American Mastiff Breed standard. (*See* Complaint at ¶ 8). The Wagner Plaintiffs allege that this advertising has misled the public and harmed the plaintiffs. (*Id*. at ¶¶ 10, 14).

On April 8, 2009, Circle W filed its Answer and Counterclaim (Doc. 26). Circle W has alleged the following facts in their Counterclaim. In December 1999, Circle W purchased an American Mastiff named Bull from Flying W's breeding stock of American Mastiffs named Gentle

Ben and Katie. Two years later, Flying W purchased another American Mastiff named Mattie, which was bred from Flying W's breeding stock of George and Maggie. In 2004, Circle W purchased another American Mastiff named Thibodeaux from Flying W's breeding stock of Neil and Sophie. (Countercl. ¶¶ 1, 3-7).

Circle W claims that every dog it has sold purporting to be an American Mastiff has been bred directly from the animals purchased from Flying W and represented by Flying W as being American Mastiffs to breed standard, capable of creating purebred offspring to breed standard, or from the offspring of the American Mastiffs purchased from Flying W. (Countercl. ¶ 8). Flying W alleges that while Circle W advertises on a website in interstate commerce that it breeds and sells American Mastiff breed dogs of the breed created by Wagner and Flying W and whose standard is set by the American Mastiff Breeders' Council, Circle W does not breed and sell such dogs, to the detriment of Flying W. (Countercl. ¶¶ 6, 7). Rather, Flying W alleges that Circle W has been selling dogs without a black mask, in direct contravention of the American Mastiff breed standard. (Countercl. ¶ 7). Circle W denies all such allegations. (Mot. to Dismiss at 2).

Circle W asserts that if it is liable to the Wagner Plaintiffs for a Lanham Act violation, then Flying W is liable to it for breach of contract, fraud/fraudulent inducement, negligent misrepresentation, indemnification, and contribution. (Countercl. ¶¶ 9-36). Flying W moved to dismiss the Counterclaim for failure to state a claim upon which relief could be granted. (Doc. 29).

## II.    RULE 12(b)(6) STANDARD

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief [.]" A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

To survive dismissal pursuant to Rule 12(b)(6), however, a claim must "contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The United States Supreme Court, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), clarified *Twombly's* plausibility standard:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 1949-50.

## III.   DISCUSSION

Circle W filed a seven-count Counterclaim against Flying W, asserting claims for breach of contract, fraud/fraudulent inducement, negligent misrepresentation, indemnification, and contribution. (Doc. 26).  Flying W asks the court to dismiss the counterclaims, arguing that each counterclaim fails to state a claim upon which relief can be granted.  The parties also dispute the appropriate law that should be applied to the pending claims.  The Court first addresses the choice of law issues and then examines Flying W's arguments with respect to each claim.

### A.   Identification of Controlling Law

Circle W contends that Nevada law controls their counterclaims; Flying W counters that Ohio law controls. The Court agrees with Flying W that Ohio law controls.  A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co., LTD*, 814 F.2d 1120, 1122 (6th Cir. 187). Therefore, Ohio choice-of-law rules are applicable.

#### 1.   Contract Claims

All three contracts explicitly state that they are governed by the laws of Ohio, and Flying W fails to provide any explanation as to why these contractual choice-of-law provisions should not be given effect. (*See* Counter-Pls.' Memo. in Opp'n to Mot. to Dismiss, Exs. 1-3).

"The Ohio Supreme Court in considering the deference to give contractual choice-of-law provisions has adopted the guidelines of the Restatement (Second) of Conflict of Laws . . . ." *Tele-Save Merchandising Co. v. Consumers Distributing Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987), citing *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Company*, 6 Ohio

6

St.3d 436, 438-39, (1983). The Restatement (Second) of Conflict of Laws § 187 (1971), entitled

"Law Of The State Chosen By The Parties," provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Rest 2d. Confl. § 187 (1971).

Applying the Restatement of the Law 2d, Conflict of Laws (1971) § 187, to the instant case, the Court finds that the listed exceptions to § 187(2)'s instruction that "the law of the state chosen by the parties to govern their contractual rights and duties will be applied," do not apply here. First, the chosen state, Ohio, does have a substantial relationship to the parties or the transaction. Circle W purchased the American Mastiff Dogs from Flying W in Ohio and Counterclaim Plaintiff Jennifer Williamson traveled to Ohio to get the dogs. Further, the AMBC is an LLC organized under the laws of Ohio and, prior to that, was an organization located in Ohio. Counterclaim Plaintiffs Circle W were members of the AMBC, participated in the AMBC

via telephone and email, and claim on their website to be members of the AMBC. Finally, Flying W contends that Circle W's alleged activities in violation of the Lanham Act are causing harm to AMBC in Ohio and its member breeders located in Ohio. Thus, the first exception to § 187(2)'s instruction does not apply. Second, Circle W fails to demonstrate that application of Ohio law would be contrary to a fundamental policy of a state which has a materially greater interest than Ohio. Thus, the second exception to § 187(2)'s instruction does not apply. Accordingly, the Court applies Ohio law to the contract claims.

## 2.    Tort Claims

Fraud claims derive from tort law, and thus, warrant a separate choice-of-law analysis than related claims for breach of contract. *Macurdy v. Love*, 894 F.2d 818, 820 (6th Cir. 1990). Section 148 of the Restatement (Second) of Conflicts of Law governs choice-of-law for fraud claims. *Id*. "When the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship." Rest. 2d. Confl. § 148(1). Additionally:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include[:]

  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and

8

(g) ease in the determination and application of the law to be applied.

Rest. 2d. Confl. § 148(6).

When a state has no real interest in protecting its citizens from fraud committed against them in other states, consideration of the factors in § 6 allows the law of the state where the fraud was committed to be applied. *Macurdy*, 894 F.2d at 821. In *Macurdy*, a Pennsylvania attorney visited an attorney in Ohio to ask the Ohio attorney to take over some of his cases. *Id.* At that time, the two allegedly entered into a contract wherein the attorneys would split the legal fees. *Id.* Subsequently, the Ohio attorney refused to turn over the allegedly agreed upon funds to the Pennsylvania attorney. *Id.* The Sixth Circuit found that Ohio law applied to a fraud claim based on these facts because "all of the contacts for purposes of the fraud claim occurred in Ohio, and Pennsylvania has no real interest in protecting Ohio's citizens from frauds committed against them in Ohio."

Similarly, in this case, the Williamsons purchased the dogs in Ohio, and therefore, the contracts were made in Ohio. *See* Rest. 2d. Confl. § 148(1). Because the contracts were drafted in Ohio, Ohio is also the state where the alleged misrepresentations were made. *See id.* Because the principles in § 6 of the Restatement, as construed by the Sixth Circuit, do not show that Nevada has a more significant relationship to the occurrence and the parties, Ohio law applies to the fraud disputes.

### 3.    Indemnity and Contribution Claims

Finally, federal law controls whether indemnification and contribution are available to Lanham Act defendants. *See Akhenaten v. Najee, LLC, No.*, 2009 WL 794485, *2 (S.D.N.Y. 2009) (stating that whether contribution is available under the Lanham Act is a matter of federal

law); *Santana Prods., Inc. v. Bobrick Washroom Equip, Inc*., 69 F. Supp. 2d 678 (M.D. Pa. 1999) (stating that the Lanham Act, as a comprehensive legislative enactment creating a private cause of action, uses the congressional intent of the drafters to determine whether contribution is available); *Getty Petroleum Corp. v. Island Transp. Corp*., 862 F.2d 10, 16 (2d Cir. 1988) (ruling that there is no federal common law right to contribution under the Lanham Act). Because Flying W's affirmative claim arises solely under the Lanham Act, federal law controls whether the defenses of indemnification and contribution will be recognized.

**B.       Counterclaim for Breach of Contract (Count 1)**

Flying W maintains that Circle W's breach of contract counterclaim fails for two reasons: first, because it is time-barred; and second, because Circle W fails to plead facts that plausibly suggest that any contractual term was breached.

Circle W's counterclaim for breach of contract is barred by the four-year statute of limitations in Ohio. Ohio's codification of the Uniform Commercial Code applies because the Williamsons purchased the dogs in Ohio, where dogs are considered to be personal property. Ohio Rev. Code Ann. § 955.03. The sale of a dog is thus governed by Section 2 of the Uniform Commercial Code, which is codified at Ohio Rev. Code Ann. § 1302.01 *et seq.* Ohio law allows a four-year statute of limitations to bring a claim for breach of contract. Ohio Rev. Code Ann. § 1302.98(A). The last contract between Craig Williamson and Flying W is dated October 20, 2004. (Countercl. Pl.'s Memo. in Opp'n to Mot. to Dismis, Appx. 3). The original Complaint was filed by the Wagner Plaintiffs on May 6, 2008 (Doc. 2). Circle W filed its counterclaim, which asserted the breach of contract claim, on April 8, 2009, more than four years after the date on the most recent contract (Doc. 26). Thus, Flying W correctly posits that Circle W's breach of

contract claims, to the extent brought in an action for affirmative relief, are time-barred. The question remains, however, whether or not the breach of contract can be brought by way of recoupment.

As to claims brought by way of recoupment, the Ohio Supreme Court has explained: "A claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim arises out of the same transaction as the plaintiff's claim for relief, and when it is offered only to reduce the plaintiff's right to relief." *Riley v. Montgomery*, 11 Ohio St.3d 75, syllabus ¶ 1 (1984).

Flying W contends that the breach of contract counterclaim cannot be brought by way of recoupment because "the defense of recoupment is a demand arising from the same contract as the plaintiff's claim." (Countercl. Defs.' Reply at 6). Flying W further contends that Circle W's breach of contract counterclaim is more appropriately classified as a claim for set-off because it does not arise from the same contract or transaction which is in the plaintiff's complaint. (*Id*. at 6-7).

Judge Holschuh recently discussed the differences between a claim of recoupment and a claim of offset under Ohio law:

> *Riley* dealt with a claim of recoupment, a "strict defense," which by its very nature arises out of the very contract giving rise to the plaintiff's claim. In contrast, a claim of offset is not a strict defense. It arises out of a transaction other than the one giving rise to plaintiff's claim. Ohio courts have distinguished between claims of recoupment, which are never barred by the applicable statute of limitations, and claims of offset, which may be barred by the statute of limitations. *See Continental Acceptance Corp. v. Rivera*, 50 Ohio App.2d 338 (Ohio Ct. App. 1976) (citing *Summers v. Connolly*, 159 Ohio St. 396, 405 (Ohio 1953)). *See also Thirty-Four Corp. v. Hussey*, 1985 WL 10275, *4 (Ohio Ct. App. 1985) (holding that because debt did not arise from same transaction as plaintiff's claim, it was subject to the applicable statute of limitations); *Holian v. Lawn Village*, 8th Dist. No. 87543, 2006-Ohio-5027, at ¶¶ 21-25 (holding that statute of limitations cannot bar strict defenses, but may bar claims of setoff that do not arise from the same transaction as plaintiff's claim).

*CSX Transp. v. Globe Metallurgical, Inc.,* 2007 WL 1567690, *9 (S.D. Ohio 2007) (Holschuh, J).

In the instant case, the Court finds that the *Riley* standards for recoupment are not met because Circle W's breach of contract claim arises out of a transaction other than the one giving rise to The Wagner Plaintiffs' Lanham Act Claim. The Wagner Plaintiffs brought the Complaint for alleged violations of the Lanham Act, not for an alleged breach of contract. In a nutshell, the Wagner Plaintiffs allege that Circle W bred, advertised and sold dogs it claimed were purebred American Mastiffs, but were not, thereby diluting Flying W's American Mastiff Brand. Counterclaim Plaintiffs Circle W's alleged breach of contract counterclaim does not arise out of its alleged behavior of breeding, advertising and selling dogs. Instead, it is based on its purchase of American Mastiffs from Flying W in 1999, 2001 and 2004. (*See* Countercl. ¶¶ 4-6 & 10). In addition, the Wagner Plaintiffs' Lanham Act claim and Circle W's counterclaim present distinctive

legal and factual questions, arise at different times and involve different sets of evidence.[2]  Thus,

Circle W's breach of contract counterclaim is properly characterized as a claim of offset.  *See e.g.*

*Holian v. Lawn Village Inc.*, 2006 WL 2776445, *3-4 (2006) (holding that a counterclaim for

recoupment of overpayment for a home built does not arise "out of the same transaction" as a

claim for relief on a promissory note drafted by one of the home's builders and neither does a

fraudulent mechanic's affidavit on the same property because it did not involve the promissory

note).  As such, it is subject to the four-year statute of limitations and is consequently time-barred.

(*See* Ohio Rev. Code Ann. § 1302.98(A)).

Accordingly, Circle W's breach of contract counterclaim is dismissed with prejudice.

**C.      Counterclaim for Breach of Duty of Good Faith (Count II)**

Flying W maintains that Circle W's breach of the duty of good faith counterclaim fails

because Ohio law does not recognize such a claim as a cause of action. (Countercl. Defs.'s Mot.

to Dismiss at 7; Reply 8-9).

Because the Court concludes that Circle W's counterclaim for breach of the duty of good

faith is time-barred for the same reasons the Court determines Circle W's breach of contract

counterclaim is time-barred, the Court declines to address Flying W's alternative argument in

favor of dismissal.

Counterclaim Plaintiffs Circle W's breach of duty of the good faith counterclaim is

dismissed with prejudice.

---

[2]The Court acknowledges that there may be some evidentiary overlap.  This does not,
however, require the conclusion that Circle W's breach of contract claim "arises out of the same
transaction" as the Wagner Plaintiffs' Lanham Act claim.

**D.      Counterclaims for Fraud/Fraudulent Inducement and Negligent Misrepresentation (Counts III & IV)**

Flying W maintains that Circle W's fraud/fraudulent inducement and negligent

misrepresentation counterclaims are improper in light of their breach of contract claims.  In

addition, Flying W argues that the counterclaims fail because they are not pled with the required

particularity.  The Court disagrees.

The Ohio Supreme Court has identified the following elements of fraud/fraudulent

inducement claims:

(a)      a representation or, where there is a duty to disclose, concealment of a fact,

(b)      which is material to the transaction at hand,

(c)      made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d)      with the intent of misleading another into relying upon it,

(e)      justifiable reliance upon the representation or concealment, and

(f)      a resulting injury proximately caused by the reliance.

*Burr v. Board of County Com'rs of Stark County*, 23 Ohio St.3d 69, 73 (1986); *Gaines v.

Preterm -Cleveland, Inc.*, 33 Ohio St.3d 54 (1987). *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167,

169 (1984).

A complaint alleging fraud/fraudulent inducement must state the specific circumstances

surrounding the alleged fraud with particularity. Fed. R. Civ. P. 9(B); *Power & Tel. Supply Co. v.

Sun Trust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (recognizing that plaintiffs asserting a

fraud claim must "allege the time, place, and content of the alleged misrepresentations on which

he or she justifiably relied, the fraudulent scheme, the fraudulent intent of the defendants, and the

injury resulting from the fraud.").  Federal Rules of Civil Procedure Rule 9 provides in relevant part:

> Rule 9. Pleading Special Matters
>
>         \*       \*       \*
>
> (b)      Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

In the instant case, Circle W adequately alleges the elements to establish a fraud/fraudulent inducement claim and states with particularity the specific circumstances surrounding the alleged fraud/fraudulent inducement as required by Fed. R. Civ. P. 9(B).

First, Circle W adequately alleges the time, place, and content of the alleged misrepresentation.  The alleged misrepresentation was that Flying W represented that the dogs they were selling to Circle W were "purebred American Mastiffs to breed standard, and capable of creating purebred offspring to breed standard." (Countercl. ¶ 20).  Circle W's allegations include the place and dates it was induced to purchase the dogs, and even include the names of the dogs it was induced to purchase.  (Countercl. ¶¶ 2-6).

Next, Circle W alleges a fraudulent scheme and the fraudulent intent of Flying W. Alleging the fraudulent intent of Flying W is more difficult because this information is in Flying W's possession. However, the particularity requirement is relaxed when the information is in the alleged fraudulent party's possession. *Michaels Bldg. Co., et al. v. Ameritrust Company, N.A,.et al.*, 848 F.2d 674, 680 (6th Cir. 1988).  Intent need not be explicitly alleged in the claim as long as it states sufficient facts upon which the Court can "reasonably infer and find that the allegation of the defendant's 'intent to defraud' has been established." *Tye v. Spitzer-Dodge*, 499 F.Supp. 687,

690 (S.D. Ohio 1980) (Kinneary, J.). In Defendants' allegations, the intent is manifest in the word "intentionally." (Countercl. at ¶ 20).

Finally, Circle W alleges justifiable reliance and resulting injury. Specifically, it alleges the purpose of the parties' agreements, that it was induced to purchase the dogs by relying on Flying W's representations, that Flying W intended to induce Circle W to purchase the dogs based upon Flying W's false representations, and that in the event that Flying W knowingly misrepresented its dogs, Circle W may be subject to liability under the Lanham Act and are damaged in an amount to be determined at trial and should also be awarded punitive damages (*See* Countercl. ¶¶ 7-8, 17, 22-23).

Further, Circle W's counterclaim provides Flying W with sufficient information to enable them to prepare a defense, thereby serving the purpose of Fed. R. Civ. P. 9(b)'s heightened pleading requirements. *See United States ex rel. Bledsoe v. Comty. Health Sys. (Bledsoe II),* 501 F.3d 493, 510 (6th Cir. 2007) (noting that Rule 9(b) is intended to provide defendants with "notice of the specific conduct with which they were charged," so that the defendants can prepare responsive pleadings); and *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008) (same). *See also*, *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (noting that the "threshold test" for determining whether Fed. R. Civ. P. 9(b)'s heightened pleading requirements have been complied with is "whether the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud,'" citing *Brewer v. Monsanto Corp.*, 644 F.Supp. 1267, 1273 (M.D. Tenn. 1986)).

In sum, the Court finds that Circle W's counterclaim adequately alleges the elements to

establish a fraud/fraudulent inducement claim and also conforms to Fed. R. Civ. P. 9(b)'s heightened pleading requirements.

Likewise, the Court finds that Circle W adequately pleads its negligent misrepresentation claim.

To plead negligent misrepresentation, Circle W must show the following elements: (1) "[I]n the course of his [business, Flying W] supplies false information for the guidance of others in their business transactions"; (2) "[Flying W] is subject to liability for pecuniary loss caused to [Circle W] by their justifiable reliance upon the information"; and (3) Flying W did not exercise "reasonable care or competence . . . in obtaining or communicating the information." *Delman v. Cleveland Hts.*, 41 Ohio St. 3d 1, 4 (1989).

Circle W alleges that Flying W supplied false information about the quality of its dogs and their ability to produce offspring to breed standard. (Countercl. ¶ 25). Circle W also alleges that Flying W negligently represented that the dogs it sold were purebred and capable of producing purebred offspring to breed standard. (*Id.*). Further, Circle W alleges that Flying W should have known or had no reasonable grounds for believing the dogs being sold to Circle W were American Mastiffs of that type when such representations were made. (Countercl. ¶ 26). Finally, in the event of negligent misrepresentation, Circle W alleges it may be subject to liability under the Lanham Act and has been damaged in an amount to be determined at trial. (Countercl. at ¶ 7-8, 28).

The Court therefore finds that Circle W adequately alleges the elements to establish a negligent misrepresentation claim and also conforms to Fed. R. Civ. P. 9(b)'s heightened pleading requirements.

**E.      Counterclaims for Contribution & Implied &  Equitable Indemnity
(Counts V, VI VII)**

Flying W maintains that Circle W's counterclaims for contribution and implied and

equitable indemnity fail because there is no right to contribution or indemnity under the Lanham

Act.  The Court agrees.

Under federal law, "[a] defendant held liable under a federal statute has a right to

indemnification or contribution from another only if such right arises: (1) through the affirmative

creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal

common law." *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130-31

(9th Cir. 1998), *cert. denied*, 528 U.S. 813 (1999). *See also Texas Indus., Inc. v. Radcliff

Materials, Inc*., 451 U.S. 630, 638 (1981).

Courts have consistently concluded that there is no right to indemnification or contribution

under the Lanham Act. *See e.g.*, *Getty Petroleum Corp. v. Island Transp. Corp*., 862 F.2d 10, 16

(2d Cir. 1988) ("No express right of contribution exists under the Lanham Act, and [the district

court] correctly concluded that it was inappropriate to imply such a right."), *cert. denied*, 490

U.S. 1006 (1989); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 69 F.Supp.2d 678,

681-84, 687 (M.D. Pa. 1999) ("[T]here is no right to contribution for violations of the Lanham

Act[,]" and "there is no federal common law right to indemnification[,] and Congress has not

explicitly or implicitly provided such a right to indemnification under . . . the Lanham Act. Thus,

indemnification with respect to violations of federal law is foreclosed."); *Anderson v. Griffin*, 397

F.3d 515, 523 (7th Cir. 2005) (acknowledging that "[c]ourts have become reluctant to recognize

a right of contribution as a matter either of federal common law or of statute" and recognizing

that the Lanham Act is one such act in which contribution is not available); *Akhenaten v. Najee, L.L.C.*, 2009 WL 794485, *2 (S.D.N.Y. 2009) (finding that the Lanham Act does not support a right to contribution and consequently granting a motion to dismiss an asserted contribution claim for failing to state a claim upon which relief can be granted); *Zero Tolerance Entm't, Inc. v. Ferguson*, 254 F.R.D. 123, 127 (C.D. Cal. 2008) (finding no right to indemnification under the Lanham Act). *Gamla Enters. N. Am., Inc. v. Lunor-Brillen Design U. Vertriebs GmbH*, 2000 WL 193120, *6 (S.D.N.Y. 2000) ("[C]ontribution is not available for claims asserted under the Lanham Act.").

Circle W fails to identify a single case overruling, abrogating, or disagreeing with the foregoing authority.  Instead, Circle W relies on authority considering claims which are unrelated to claims for indemnity or contribution under the Lanham Act. (*See* Countercl. Pls.' Memo. in Opp'n to Mot. to Dismiss at 15, citing *Elkins v. Access-Able, Inc.*, 2004 WL 1752866 (Ohio App. 2004) (claims arising from a car accident); *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204 (2d Cir. 2000) (claims arising from a mass tort); *Travelers Indem. Co. v. Towbridge*, 321 N.E.2d 11 (Ohio 1975) (claims arising from work related injury); *Conoco Inc. v. J.M. Huber Corp.*, 289 F.3d 819 (Fed. Cir. 2002) (discussing federal common law right to restitution); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (discussing ERISA); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range, Inc.*, 71 F. Supp. 2d 864 (N.D. Ill. 1999) (discussing ERISA); *In re Teknek, LLC*, 343 B.R. 850 (N.D. Ill. Bkrtcy. 2006) (regarding the appointment of a receiver in bankruptcy); and *Transdermal Prods. Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551 (E.D. Pa. 1996) (discussing contribution between joint tortfeasors for trademark violations of the Lanham Act and only allowing contribution for the state law claims)).

Accordingly, the cases relied upon by Circle W do not control this dispute.

In conclusion, because Circle W is foreclosed as a matter of federal law from seeking indemnity and contribution for a violation of the Lanham Act, this Court dismisses Counts V, VI and VII of the Counterclaim.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Counterclaim Defendant Flying W's Motion to Dismiss (Doc. 29).

Counterclaim Plaintiffs Circle W's counterclaims for fraud/fraudulent inducement and negligent misrepresentation remain pending; all other counterclaims are dismissed with prejudice.

The Clerk shall remove Document 29 from the Court's pending motions list.

**IT IS SO ORDERED.**


 **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**