UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Fredericka Wagner, *et al.*,

       Plaintiffs,

                                                      **Case No. 2:08-CV-00431**

v.                                                   **JUDGE SMITH**
                                                   **Magistrate Judge Kemp**

Circle W Mastiffs, *et al.*,

       Defendants.

Craig W. Williamson,

       Plaintiff,

                                                      **Case No. 2:09-CV-00172**

v.                                                   **JUDGE SMITH**
                                                   **Magistrate Judge Kemp**

American Mastiff Breeders
Council, *et al.*,

       Defendants.

## OPINION AND ORDER

      This matter is before the Court on the following motions and objections:  Plaintiffs Circle W Mastiffs, Craig Williamson, and Jennifer Williamson's Motion for Summary Judgment (Doc. 133 in Case No. 08-cv-431); Defendant Tammy Venkler's Motion for Summary Judgment (Docs. 187 and 203 in Case No. 2:09-cv-172); Defendant Diane St. Martin's Motion for Summary Judgment (Doc. 200 in Case No. 2:09-cv-172); Defendant Cameran Pridmore's Motion for Summary Judgment (Doc. 205 in Case No. 2:09-cv-172); Plaintiffs Circle W Mastiffs, Craig Williamson, and Jennifer Williamson's Objections to Magistrate's Order (Doc. 211 in Case No. 2:09-cv-172); and Plaintiff Sandy Taylor's Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(a)(2) (Doc. 221 in Case No. 2:08-cv-431).  For the reasons that follow, the Court **OVERRULES** the Objections; **GRANTS** the Motions for Summary Judgment

filed by Venkler, St. Martin, and Pridmore; **GRANTS** the Motion for Summary Judgment filed by Circle W Mastiffs, Craig Williamson, and Jennifer Williamson; and **DENIES as moot** Taylor's Amended Motion to Dismiss.

## I.    Background

Some cases are dogs.  Some cases are about dogs.  These cases are both.  Needless to say, this litigation has an extensive procedural history, which has been documented in previous decisions of this Court, and therefore will not be repeated in its entirety herein. *See, e.g.*, *Wagner v. Circle W. Mastiffs*, 732 F. Supp. 2d 792 (S.D. Ohio 2010) (Smith, J.); *Wagner v. Circle W. Mastiffs*, 2011 WL 124226, (S.D. Ohio Jan. 14, 2011) (Kemp, M.J.).  A brief background of the cases, however, is appropriate.

The issues in these cases center on the breeding and sale of American Mastiff puppies. The American Mastiff is a recognized dog breed and is registered with the Continental Kennel Club.  In 2000, the American Mastiff breed was created by Fredericka Wagner and her breeding operation, Flying W Farms.  The American Mastiff Breeders Council initially was an unincorporated association consisting of a group of American Mastiff breeders in the United States.  On May 8, 2008, the American Mastiff Breeders Council formally organized as an Ohio limited liability company under the name American Mastiff Breeders Council, LLC.   Although the cases at bar have involved many litigants, the pending motions involve the following parties: Circle W Mastiffs, Craig Williamson, Jennifer Williamson, American Mastiff Breeders Council, LLC, Connie Hammond, Tammy Venkler, Diane St. Martin, Sandy Berger, Sandy Taylor, Kevin Ware, Melanie Ware, and Cameran Pridmore.

Craig Williamson, owner and operator of Circle W Mastiffs, is a dog breeder who represents himself as being a breeder and seller of American Mastiff dogs.  Craig Williamson was excluded from membership with the American Mastiff Breeders Council after the association formed an LLC in 2008.  Jennifer Williamson is Craig Williamson's spouse.

Defendant Tammy Venkler was a breeder of American Mastiffs for a relatively short

period of time (from approximately 2007 until 2008).  She attended the American Mastiff Breeders Council Meeting in 2008, and shortly thereafter ceased breeding American Mastiff dogs because it was cost prohibitive for her.

Diane St. Martin, who operates Hidden Acres Farm, is a breeder of American Mastiff dogs.  St. Martin first purchased an American Mastiff dog from Fredericka Wagner and Flying W Farms in 2000.  St. Martin began breeding American Mastiff dogs in 2005.  In 2007, St. Martin visited Williamson at his home in Nevada, but the visit was short as she was not invited into the home.  The basis of this visit is the subject of debate.  She asserts that it was part of an effort to reach out to Williamson and his wife, but Williamson asserts that the visit was motivated by an attempt to gather negative information regarding his breeding program. Additionally, based on St. Martin's association with the American Mastiff Breeders Council, she was involved in discussions with other American Mastiff Breeders Council members regarding breeders who did not, in the view of the group, breed American Mastiff dogs according to the breed standard.

Cameran Pridmore has been in the business of breeding dogs for over 30 years, and she has been breeding American Mastiff dogs since the early 2000s, when she purchased her first American Mastiff breeding dogs from Fredericka Wagner and Flying W Farms.  She was also involved in the American Mastiff Breeders Council discussions regarding breeders who did not, in their view, breed American Mastiff dogs according to the breed standard.

Sandy Taylor, Connie Hammond, Sandy Berger, Kevin Ware, and Melanie Ware, are also in the business of breeding and selling American Mastiffs.

In Case No. 2:08-cv-431, which was initiated in this Court in May 2008, Tammy Venkler, Diane St. Martin, Cameran Pridmore, Sandy Taylor, American Mastiff Breeders Council, Connie Hammond, Sandy Berger, Kevin Ware, Melanie Ware, and others, sued Craig Williamson, doing business as Circle W Mastiffs, and Jennifer Williamson, under the Lanham Act, alleging that the defendants had engaged in wrongful conduct that diluted the value of the

American Mastiff dog breed.  Specifically, the plaintiffs in Case No. 2:08-cv-431 alleged that the Williamsons engaged in false advertising, in violation of the Lanham Act.  In Case No. 2:09-cv-172, which was originally filed in Nevada in June 2008 and was transferred to this Court in March 2009, Plaintiff Craig Williamson sued Defendants Venkler, St. Martin, Pridmore, Taylor, Berger, Hammond, Kevin Ware, Melanie Ware, and others, alleging claims under antitrust law, two claims of defamation, and one claim of intentional interference with a business relationship.

As pertinent to Defendants Venkler, St. Martin, Pridmore, Berger, Hammond, Kevin Ware, and Melanie Ware, three claims of Plaintiff Williamson remain pending against each of them in Case No. 2:09-cv-172 (two claims for defamation, and one claim for intentional interference with a business relationship).  Plaintiff Williamson's other claims against these Defendants were dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Aug. 10, 2010 Opinion and Order, Doc. 55 in Case No. 2:09-cv-172).  As it relates to Taylor, no claim remains pending against her in Case No. 2:09-cv-172, and she was dismissed from that case in December 2013.  (*See* Docs. 55 and 201 in Case No. 2:09-cv-172).

In Case No. 2:08-cv-431, the Lanham Act claims of the plaintiffs named above (the "Lanham Act plaintiffs") against Circle W Mastiffs, Craig Williamson, and Jennifer Williamson, remain pending.  In January 2011, the Williamsons moved for summary judgment on the Lanham Act claims.  The Lanham Act plaintiffs opposed the Williamsons' Motion for Summary Judgment, arguing that the Williamsons misunderstood the nature of their claims against the Williamsons, that they presented evidence that the Williamsons made false or misleading statements of fact concerning the American Mastiff dogs that they sell, and that the summary judgment motion was premature.  More particularly, the Lanham Act plaintiffs explained that their claims against the Williamsons are for false advertising, not for trademark infringement. The Lanham Act plaintiffs further asserted that the Williamsons "falsely advertised that their maskless dogs are American Mastiffs, in derogation of the breed standard."  (Doc. 104 in Case No. 2:08-cv-431).  The Lanham Act plaintiffs also argued that the request for summary judgment

4

was premature because discovery had not been completed, and therefore requested that the Court defer its ruling on the Motion for Summary Judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.  In September 2011, the Court issued an Order denying without prejudice the Williamsons' Motion for Summary Judgment, and granting the Lanham Act plaintiffs' request for relief under Rule 56(d) (Doc. 121 in Case No. 2:08-cv-431).

On May 18, 2012, the Williamsons again filed a Motion for Summary Judgment in Case No. 2:08-cv-431.  Five days later, the Lanham Act plaintiffs requested the Court to hold summary judgment briefing in abeyance until 51 days after the close of discovery.  In March 2013, the Court issued an Order addressing the May 2012 Motion for Summary Judgment and the request to hold briefing on the motion in abeyance (Doc. 176 in Case No. 2:08-cv-431).  In reviewing the requests, the Court noted that there were ongoing discovery disputes and mediation efforts.  The Court encouraged the parties to participate in mediation, and it ordered that, if mediation was unsuccessful, the Magistrate Judge was to establish a final case management schedule.  The Court ordered any responses to the May 2012 Motion for Summary Judgment to be filed by 51 days after the close of discovery.  As amended by the Magistrate Judge's January 31, 2014 Order, discovery was to be completed by December 30, 2013.  None of the remaining plaintiffs in Case No. 2:08-cv-431 filed an opposition to the Williamsons' May 2012 Motion for Summary Judgment.

In September 2013, Defendant Venkler filed a second "Motion to Dismiss" in Case No. 2:09-cv-172) and Plaintiff Williamson filed a response to the motion.  This Court converted Defendant Venkler's September 2013 Motion to Dismiss into a motion for summary judgment and permitted the parties to submit additional material.  (*See* Nov. 18, 2013 Order, Doc. 198 in Case No. 2:09-cv-172).  The Court permitted Defendant Venkler to submit additional evidentiary materials and/or briefing on the merits of Plaintiff Williamson's remaining claims against her, and it permitted Plaintiff Williamson to submit responsive briefing to any additional evidentiary materials and/or briefing.  In December 2013, Defendant Venkler filed a "Motion for Summary

Judgment," a document presumably filed in support of her earlier filed motion that the Court converted to a motion for summary judgment, arguing that summary judgment should be granted in her favor on the claims of defamation and intentional interference with a business relationship. Defendant Venkler asserts that because Plaintiff Williamson has failed to identify or show any wrongful act taken by her against him, his claims fail as a matter of law.  Even though Plaintiff Williamson responded to Defendant Venkler's second motion to dismiss, he did not file a response to her December 2013 filing in support of her request for summary judgment.  In November 2013, Defendant St. Martin filed her Motion for Summary Judgment, and in December 2013, Defendant Pridmore filed her Motion for Summary Judgment.

On January 31, 2014, the Magistrate Judge issued an order disposing of various discovery motions filed by Craig Williamson and Jennifer Williamson.  On February 14, 2014, Circle W Mastiffs, Craig Williamson, and Jennifer Williamson filed Objections to the Magistrate Judge's Order.

On February 17, 2014, Sandy Taylor filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(a)(2), requesting an order dismissing her Complaint against Circle W Mastiffs, Craig Williamson, and Jennifer Williamson in Case No. 2:08-cv-431.  On February 26, 2014, Plaintiff Taylor amended her request, indicating that she sought the Williamsons' consent to her Motion to Dismiss, and that the Williamsons did not respond to the request.  On March 20, 2014, the Williamsons filed a memorandum in opposition to the Amended Motion to Dismiss.  The next day, Plaintiff Taylor filed a reply in support, clarifying that she was seeking a dismissal with prejudice.

For ease of discussion, the Court first will address the Williamsons' Objections to the Magistrate's Order, it will then address the Motions for Summary Judgment filed by Venkler, St. Martin, and Pridmore, it will then address the Williamsons' Motion for Summary Judgment, and lastly it will address Plaintiff Taylor's Amended Motion to Dismiss.

II.    **Williamsons' Objections to Magistrate's Order**

6

The Williamsons challenge the Magistrate Judge's Order filed January 31, 2014, which resolved various discovery motions filed by the Williamsons.  As pertinent to the Williamsons' Objections, the Magistrate Judge denied as moot the Williamsons' request for leave to serve additional discovery requests on Sandy Taylor because she had been dismissed from Case No. 2:09-cv-172 (the case Craig Williamson initiated against Taylor and others[1]); granted the Williamsons' motion to modify the scheduling order to extend all remaining dates by 30 days; and denied the Williamsons' motion to compel directed at Diane St. Martin and Cameran Pridmore.  The Williamsons argue that their request for leave to serve additional discovery on Sandy Taylor is not moot because she remained a plaintiff in Case No. 2:08-cv-431, that the motion to modify the case schedule was not granted until after the final deadline in the proposed case scheduled had occurred, and that the Magistrate Judge erroneously denied their motion to compel as it related to St. Martin and Pridmore because they waived their objections.

In reviewing an order issued by a Magistrate Judge on nondispositive matters, a district judge must "modify or set aside any portion of the order that is clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  The clearly erroneous standard applies to a magistrate judge's findings of fact and the contrary to law standard to his conclusions of law.  *See Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992).  A finding is "clearly erroneous" only when the reviewing court is left with the definite and firm conviction that a mistake has been made.  *See In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (citations omitted).  A court's review under the "contrary to law" standard is "plenary, . . . and it 'may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found

---

[1] The Williamsons note that, in resolving their motion for leave to serve additional discovery requests, the Magistrate Judge incorrectly stated that the "Williamsons contend that the information sought through these requests is critical to their Lanham Act claim."  (Doc. 209 in Case No. 2:09-cv-172).  Because the Williamsons did not file a Lanham Act claim, the order should have referred instead to Craig Williamson's defamation claims.  This scriveners error is inconsequential, however, because, for the reasons stated below, the Williamsons fail to demonstrate that the conclusion reached by the Magistrate Judge, on the issue of Williamsons' request for leave to serve additional discovery requests on Taylor, is clearly erroneous or contrary to law.

in the Constitution, statutes, or case precedent.' "  *Gandee*, 785 F. Supp. at 686 (citations omitted).

The Court has reviewed the Magistrate Judge's January 31, 2014 Order, with particular focus on the challenged aspects of the decision, and finds nothing clearly erroneous or contrary to law.  The Magistrate Judge correctly determined that the motion for leave of court to serve additional discovery requests on Taylor is moot.  The Williamsons argue that the request is not moot because Taylor's Lanham Act claim in Case No. 2:08-cv-431 remains pending.  Even assuming this argument had weight, it is unavailing because Taylor's Lanham Act claim is resolved by this Court's decision to grant the Williamsons' Motion for Summary Judgment in Case No. 2:08-cv-431.  Additionally, while the Williamsons assert that the Magistrate Judge's delay in ruling on their motion to modify the case schedule operated as a denial of the request, they fail to explain how any delay in ruling on the motion was prejudicial to their effort to prosecute their claims.  Lastly, despite generally arguing that the Magistrate Judge should not have excused St. Martin and Pridmore's untimely response to their motion to compel, the Williamsons do not address the Magistrate Judge's observation that they made no attempt to explain how the requested information is relevant in this litigation.  For these reasons, the Court cannot find that any of the challenged aspects of the Magistrate Judge's January 31, 2014 Order was clearly erroneous or contrary to law, and, therefore, the Court finds that the Williamsons' Objections are without merit.

**III.    Motions for Summary Judgment filed by Defendants Venkler, St. Martin, and Pridmore**

**A.    Summary Judgment Standard**

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate,
however, if the nonmoving party fails to make a showing sufficient to establish the existence of
an element essential to that party's case and on which that party will bear the burden of proof at
trial.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir.
2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric
Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence
and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving
party.  *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence
presents a sufficient disagreement to require submission to a jury or whether it is so one-sided
that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-53.  Moreover,
the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine
issues of fact to be tried.  *Lashlee v. Sumner*,  570 F.2d 107, 111 (6th Cir. 1978).  The Court's
duty is to determine only whether sufficient evidence has been presented to make the issue of
fact a proper question for the jury; it does not weigh the evidence, judge the credibility of
witnesses, or determine the truth of the matter.  *Liberty Lobby*, 477 U.S. at 249; *Weaver v.
Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the
hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present
affirmative evidence in order to defeat a properly supported motion for summary judgment.'"
*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477
U.S. at 257).  The existence of a mere scintilla of evidence in support of the opposing party's
position is insufficient; there must be evidence on which the jury could reasonably find for the
opposing party.  *Liberty Lobby*, 477 U.S. at 252.  The nonmoving party must present "significant
probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the

9

material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street*, 886 F.2d at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### B. Discussion

The Court will separately discuss the pending motions for summary judgment.

#### 1. Defendant Venkler's Motion for Summary Judgment

Defendant Venkler contends that she is entitled to summary judgment in her favor on Plaintiff Williamson's remaining claims against her – the defamation and intentional interference with a business relationship claims.  She argues that Plaintiff Williamson has failed to allege or show that she had any involvement in the alleged misconduct against him.  In support, she has submitted evidence indicating that she had no involvement in any conduct that related to Plaintiff Williamson and the disagreement concerning the American Mastiff dog breed standard.  In response, Plaintiff has not presented any evidence in support of his remaining claims against Defendant Venkler.  Because Defendant Venkler has met her burden in support of her motion, and Plaintiff fails to present affirmative evidence in support of his claims against her, Defendant Venkler is entitled to summary judgment in her favor as to the remaining claims against her.

#### 2. Defendant St. Martin's Motion for Summary Judgment

Defendant St. Martin moves for summary judgment in her favor with respect to Plaintiff Williamson's claims against her that remain pending.  She argues that no genuine issue of material fact exists, and she is entitled to judgment as a matter of law, as to Plaintiff

Williamson's claims against her for defamation and intentional interference with a business relationship.  Plaintiff Williamson argues that there are numerous disputed material facts precluding summary judgment in favor of Defendant St. Martin, and therefore her request should be denied.

Before analyzing the merits of Defendant St. Martin's Motion for Summary Judgment, the Court notes that the parties have not engaged in any choice-of-law analysis to determine whether Ohio or Nevada law should govern Plaintiff Williamson's remaining claims against Defendants St. Martin and Pridmore.  However, Defendants St. Martin and Pridmore cite both Nevada and Ohio law in support of their respective motions for summary judgment, arguing that under the law of either state, Plaintiff Williamson's remaining claims fail.  In response to Defendant St. Martin's Motion for Summary Judgment, Plaintiff Williamson does not cite any case law, and in response to Defendant Pridmore's Motion for Summary Judgment, Plaintiff Williamson cites a few Nevada cases pertaining to defamation and tortious interference with a business relationship that are also cited by Defendant Pridmore.  No party asserts that there is any notable difference between Nevada and Ohio law regarding claims for defamation or tortious interference with a business relationship that may be pertinent here.  Regardless of which state's law applies, Plaintiff Williamson's remaining claims against Defendants St. Martin and Pridmore fail as a matter of law, for the reasons set forth below.

> **a.    Defamation**

Defendant St. Martin argues that Plaintiff Williamson fails to identify any defamatory statement made by her, and that the qualified privilege defense otherwise applies to her allegedly defamatory statements.  Under Nevada law, the general elements of a defamation claim require a plaintiff to prove: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nevada 1993). Under Ohio law, the elements of a defamation claim, whether libel or slander,

are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Akron-Canton Waste Oil v. Safety-Kleen Oil Servs.*, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992)) (internal quotation marks omitted).

Plaintiff Williamson asserts that Defendant St. Martin was so upset by being turned away at his home that she attempted to disparage his breeding operation by informing Connie Hammond, a founding member of the American Mastiff Breeders Council, that one of the dogs he sold was the subject of negative commentary in a discussion forum on the website www.americanmastiffs.org. Plaintiff Williamson contends that Defendant St. Martin made defamatory statements in an email, and that she made defamatory statements in discussions with other American Mastiff breeders. In particular, Plaintiff Williamson asserts that a January 6, 2008 email that Defendant St. Martin sent to Hammond was defamatory.

The email sent by Defendant St. Martin primarily consisted of forwarded statements made by Defendant Pridmore regarding a "maskless American Mastiff" and statements of response made by the discussion board monitor on the website www.americanmastiffs.org. (Doc. 204-10). On January 6, 2008, Defendant Pridmore posted the following on the website's discussion forum:

> As an AMBC breeder I can say that their [sic] is something very wrong with a maskless American Mastiff just as if their [sic] were a maskless OEM [Old English Mastiff]. American Mastiffs "have masks." This so called "maskless mastiff" is of a breeding gone bad. I have been breeding dogs for 30 years, ran a rescue for 14 years (all breed rescue dba Red Dog Kennel and Rescue) have been training and doing behavior work for 25 years. I know my breeds. I also know that to have a good dog, it does not take registration papers. "But" if you are one of the people that has purchased a maskless mastiff you need to go wright [sic] back to your breeder and demand your money back if in fact they have sold you an American Mastiff that is maskless! That is no different than purchasing a dalmatian with long hair. You have been misled into believing that you have an American Mastiff, which in fact you do not, you have an American Mastiff cross and should have not paid a price for a pure bred dog when in fact it is not. I have no doubt that you love your dog and it is probably a wonderful dog, but in all

fairness to yourself you paid money for a dog that has been misrepresented by the breeder.  Please contact the AMBC president with this subject, for it needs to be handled in the proper manor.  This subject should be ended in this forum and is very delicate to those of whom are involved.  Please go to the Flying W Farms web[site] to discuss this matter further, with the founder and AMBC president.  Please end this here and contact the above.  You will get all of the correct info from the person that set the standards.

(Doc. 204-10).  The discussion board monitor "Doug" added the following posts:

I just want to let everyone know that maskless American Mastiffs do not meet the standard of the breed and are not allowed to be sold.  If one is maskless and is a breeders dog that is fine.  If anyone has issues with this they need to talk to the AMBC.

. . .

The pics aren't a problem.  This issue is only the fact that I have to moderate this board and keep to the standards of the AMBC.  All dogs are welcome on this forum but we have to be certain we let everyone know this is not usual and normally you cannot buy one of these Ams.  You have a great dog.  I am at the mercy of the standard of the breed set forth by AMBC.

*Id.*

By means of the January 6, 2008 email, Defendant St. Martin forwarded the above-quoted statements of Pridmore and the discussion board monitor, and she added her own commentary to the statements.  Defendant St. Martin stated: "There is a topic on the .org site re maskless mastiffs.  There were several posts back and forth from mastiff owners and the owner of the Maskless puppy 'Lucy' that started the uproar in the first place.  Doug [the discussion board monitor] did an excellent job representing the breed standard and both he and [Pridmore] have weighed in." *Id.*

Plaintiff Williamson also asserts that Defendant St. Martin made other statements to American Mastiff Breeders Council members that were defamatory.  In support, he cites the following deposition testimony of Defendant St. Martin:

Q.    Did you ever make the statement that Mr. Williamson's dogs are not American Mastiffs?

A.    I do not remember.

Q.    So you may have made that statement.  You don't remember?

13

A.      I – my business motto is never to be disparaging of people.

Q.      So you don't know whether you did make the statement that Mr.
        Williamson's dogs are not American Mastiffs or you didn't; it that
        correct?

A.      I do not remember specifically making that statement, no.

Q.      Okay.  I'm confused by your answer.  Are you saying you didn't make the
        statement, or you don't know if you did or didn't?

Mr. Rubin: Objection.

A.      It is not my approach to denigrate people to other people.  In a discussion
        were we talking as to whether the dogs met the breed standard?  Yes.  Did
        I specifically say Mr. Williamson bred non-breed standard dogs?  If you
        were referring to other breeders with conversation, it was a point of
        conversation.  Do I feel the maskless dog advertised is a non-breed
        standard dog?  Yes.

Q.      Ma'am, did you ever make the statement that Mr. Williamson's dogs are
        not American Mastiffs?  Very simple, direct question.

Mr. Rubin:      Which she has answered.

Mr. Kent:       She hasn't answered.

A.      I have made the statement that I do not feel the specific dogs produced
        without a mask should be registrable as American Mastiffs with a CKC.

Q.      That wasn't my question.  My question was whether you made the
        statement that Mr. Williamson's dogs were not American Mastiffs.

A.      His breeding stock dogs?

Q.      I'm asking if you made the statement that Mr. Williamson's dogs were not
        American Mastiffs.

A.      I may have made the statement in conversation that I considered the dogs
        he bred without masks to not be American Mastiffs.  I did not make a
        general statement to his dogs.

Q.      Did you ever make the statement that Mr. Williamson misrepresented his
        dogs?

A.      Not that I remember.

. . .

Q.      Did you ever say that some or all of the dogs that Circle W or Mr.
        Williamson sells and advertises as being of the American Mastiff breed
        are not American Mastiffs?

14

A.      Two other breeders in conversation that a dog that did not produce a mask puppy, a critical component of the breed standard at birth should not be sold and registered as an American Mastiff.  At birth, it is obvious to see the dog carries none of the characteristics from the eye orbits to the mask. Conversations with other breeders, yes.

Q.      Who were the individuals?

A.      I couldn't speak to that.

Q.      What's that mean?

A.      It means I don't have specific names that I recall.  But it would have only been to American Mastiff breeders.

Q.      Okay.  Did you ever make any comment that Mr. Williamson's, Circle W's dogs were not American Mastiffs?

Mr. Rubin:      Objection.  Asked and answered.

A.      Two discussions with other breeders about what the breed standard was and that a dog that did not meet the breed standard at birth and when sold should not be sold, in my opinion, as a registrable dog.

Q.      Do you agree that that's a derogatory thing to say about somebody who is breeding American Mastiffs, that the dogs that they are selling are not really American Mastiffs?

Mr. Rubin:      Objection.

A.      It would be the truth about a particular dog, in my opinion about a particular dog is what I can speak to.  The particular dog that didn't meet breed standard, one dog, two dog, three dogs, that particular dog that did not meet breed standard is a fact in point, in my opinion, that should not be sold as an American Mastiff.  That does not make it a derogatory comment.  It's a statement of fact in my opinion.

(St. Martin Dep. at 163-65, 209-11; Doc. 206-1).

Plaintiff Williamson asserts that Defendant St. Martin's statement that the discussion board monitor "Doug" did an "excellent job representing the breed standard," and her statements to other American Mastiff breeders, were all false because the American Mastiff Breeders Council had not yet approved a breed standard, and thus she did not know the breed standard at that time.  Thus, an underlying principle of Plaintiff Williamson's defamation claims is that there existed no breed standard requiring a black or dark mask prior to the American Mastiff Breeders

15

Council's formal approval of the breed standard in 2008.  Plaintiff Williamson reasons that because the American Mastiff Breeders Council did not approve the breed standard until June 2008, then there was no breed standard before the formal approval, and therefore it was improper for Defendant St. Martin to state that a maskless dog born before the formal approval in 2008 does not meet the American Mastiff dog breed standard.  In support of his position, Plaintiff Williamson cites the following allegation that Defendants St. Martin, Pridmore, and others, asserted in the Complaint in Case No. 2:08-cv-431: "the AMBC sets the standards for the American Mastiff breed recognized by the Continental Kennel Club."  (Compl. at ¶ 3).  Plaintiff also contends that any breed standards not written and approved by the American Mastiff Breeders Council is "irrelevant and has no bearing on the American Mastiff breed."  (Pl.'s Mem. in Opp., at 11, n.10; Doc. 204).  Finally, Plaintiff argues that Defendant St. Martin's allegedly defamatory statements were not privileged because there were made with actual malice.

Plaintiff Williamson's position on whether Defendant St. Martin made defamatory statements concerning his dogs and the American Mastiff breed standard misses the mark and is not consistent with the evidence.  The evidence in this matter demonstrates that the breed standard for the American Mastiff dog requires a dark, if not black, colored mask.  Since its inception as a dog breed in 2000 (as recognized by the Continental Kennel Club), the breed standard for the American Mastiff dog breed has evolved over time, and in late 2007, the American Mastiff Breeders Council proceeded to draft a breed standard for approval by the association.  Fredericka Wagner, the creator of the breed, was an integral player in this process.  The American Mastiff Breeders Council members did not formally approve the finalized breed standard until June 2008.  Plaintiff Williamson finds this circumstance to be significant in relation to the comments made about his maskless dogs.  As noted above, Plaintiff Williamson reasons that, absent evidence of a written formal breed standard approved by the American Mastiff Breeders Council prior to its approval of the breed standard in June 2008, there was no established breed standard.  Plaintiff Williamson, however, fails to present any evidence that no

16

breed standard existed as it relates to the American Mastiff dog breed prior to June 2008.  To the contrary, Wagner testified that the American Mastiff dog breed standard has, since the inception of the breed, and its recognition by the Continental Kennel Club in 2000, required a dark colored mask on the face of the dog.  Additionally, Pridmore testified that, based on her thirty-plus years of breeding dogs, it is her understanding that the creator of a dog breed creates the breed standard, and because Wagner created the American Mastiff dog breed, she created the breed standard for this breed of dog.

Thus, there is evidence that a breed standard for the American Mastiff dog breed existed prior the American Mastiff Breeders Council's approval of the breed standard in 2008, and that the breed standard always included the guideline, if not requirement, that an American Mastiff dog should have a dark, if not black, colored mask.  Plaintiff Williamson has not rebutted this evidence.  His suggestion that no breed standard existed prior to the American Mastiff Breeders Council's approval of the breed standard in 2008 is unavailing as it does not address the testimony of the breed's founder, Wagner, indicating that the dark mask has been a requirement since approximately 2000, when the breed was first recognized by the Continental Kennel Club.  That is, even though the American Mastiff Breeders Council did not formally approve the breed standard until 2008, a breed standard existed prior to that approval – a standard that originated with the founder of the breed, Wagner.

Additionally, the cited statements of Defendant St. Martin were statements of opinion.  A statement of opinion cannot be defamatory.  *Vail v. The Plain Dealer Publ'g Co.*, 649 N.E.2d 182 (Ohio 1995); *see Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002) (noting that statements of opinion cannot be defamatory because "there is no such thing as a false idea.").  The determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court.  *Scott v. News–Herald*, 496 N.E.2d 699, 705 (Ohio 1986); *see Pegasus*, 57 P.3d at 88.  Ohio courts use a "totality of the circumstances" test in making this determination.  *Id.* at paragraph one of the syllabus.  Under this test, Ohio courts analyze (1) the

17

specific language used; (2) whether the statement is verifiable; (3) the general context within which the statement is made; and (4) the broader context within which the statement appeared. *Id.* at 706.  Similarly, in Nevada, in order to determine if a statement is one of fact or opinion, "the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact."  *Pegasus*, 57 P.3d at 88. Regarding this issue, Nevada courts consider "(1) whether the general tenor of the entire work negates the impression that defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false."  *Flowers v. Carville*, 112 F. Supp. 2d 1202, 1210 (D. Nev. 2000) *rev'd in part on other grounds*, 310 F.3d 1118 (9th Cir. 2002).  Under either test, Plaintiff Williamson's defamation claims against Defendant St. Martin fail as a matter of law.

A "breed standard" sets the benchmark for characteristics associated with a particular dog breed.  The American Kennel Club, which promotes and sanctions the prestigious Westminster Kennel Club Dog Show, defines "breed standard" as a "word picture describing how the perfect dog of a breed should look, move, and behave."  *See* American Kennel Club, AKC Glossary, http://www.akc.org/about/glossary.cfm (last visited Mar. 27, 2014) (defining words and terms associated with dogs).  Thus, breed standards are a means to define the idealized dog of a particular breed, which, by implication, also differentiates the many dog breeds in relation to their appearance, movement, and temperament.  It is clear that a point of contention between the parties is the significance of the absence of a dark mask on a dog bred as an American Mastiff. Defendant St. Martin's allegedly defamatory statements reflect her belief that a dog that does not have a dark mask does not meet the American Mastiff dog breed standard, and therefore should not be sold as a registrable American Mastiff dog, or bred as part of an American Mastiff dog breeding operation.  Thus, Defendant St. Martin's testimony indicates a belief that the presence of the dark mask is significant, and that it is not a fault that can be overlooked.  Plaintiff

18

Williamson implicitly takes the position that the absence of a dark mask on purported American Mastiff dogs is not a significant problem, at least as it relates to dogs born prior to the American Mastiff Breeders Council's formal adoption of the breed standard in 2008, and that statements indicating otherwise are disparaging and untrue.

In view of the definition of breed standard, it is essentially an idealized view of the dog breed, unlikely attained by any individual dog. However, it stands to reason that certain deviations from the standard could be viewed as so significant that the dog should not be either sold as being a registrable dog of a certain breed, or bred to further the breed. Conversely, one could reasonably argue that the absence of a certain trait is relatively insignificant. Neither position is provable as true or false, as they are both rooted in differing subjective opinions of the relative importance of a certain characteristic for a certain dog breed. Thus, the relative significance of an American Mastiff dog not having a dark mask is a matter of opinion, and members of the American Mastiff Breeders Council (not including Plaintiff Williamson) have expressed the opinion that such an omission is significant as it relates to registering and breeding the dog. Consequently, Defendant St. Martin's statements of opinion regarding dark masks on American Mastiffs are not actionable.

Moreover, even if the statements were actionable, they are privileged. Qualified privilege is a defense to a defamation claim. *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975)*; Lubin v. Kunin*, 17 P.3d 422, 428 (Nevada 2001). A publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of [the defendant's] own affairs, in matters where his interest is concerned." *Id.*; *see Lubin*, 17 P.3d at 428 (noting that a qualified privilege "exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty."). A qualified privilege "'does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege,

and makes a showing of falsity and actual malice essential to the right of recovery.'" *Hahn*, 331 N.E.2d at 718 (quoting 50 Am. Jur. 2d 698, *Libel and Slander*, § 195).  In a qualified privilege case, "actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.  *Jacobs v. Frank*, 573 N.E.2d 609, 613 (Ohio 1991); *Pegasus*, *supra*.

Here, Defendant St. Martin's allegedly defamatory statements were made to other members of the American Mastiff Breeders Council, and they concerned matters about which she has an interest.  Defendant St. Martin is a breeder of American Mastiffs and consequently has an economic interest in matters that may impact the integrity of the breed.  Plaintiff Williamson argues that Defendant St. Martin's statements were made with "actual malice," and not covered by the privilege, because she had knowledge that the statements were false or they were made with serious doubt as to their veracity.  Plaintiff Williamson's argument in this regard is unavailing because it is based on his faulty premise that Defendant St. Martin had no basis for her statements.  As discussed above, the evidence shows that the dark mask attribute has been part of the American Mastiff dog breed standard since the recognition of the breed by the Continental Kennel Club in 2000.  Thus, no reasonable jury could find that Defendant St. Martin made her statements with actual malice.

For these reasons, Plaintiff Williamson's defamation claims against Defendant St. Martin fail as a matter of law.

### b.     Tortious Interference with a Business Relationship

Plaintiff Williamson alleges that Defendant St. Martin tortiously interfered with his business relationships relating to his breeding program.  Defendant St. Martin argues that she is entitled to summary judgment in her favor as to Plaintiff Williamson's claim of tortious interference with a business relationship because Plaintiff Williamson fails to present evidence in support of his claim that she intentionally caused a breach or termination of an existing or prospective business relationship.

A plaintiff claiming intentional interference with contractual relations must establish: a valid and existing contract, the defendant's knowledge of the contract, intentional acts intended or designed to disrupt the contractual relationship, actual disruption of the contract, and resulting damage. *J.J. Industries, LLC v. Bennett*, 71 P.3d 1264 (Nev. 2003); *see Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999) (setting forth elements of tortious interference with contract as: the existence of a contract, the wrongdoer's knowledge of the contract, the wrongdoer's intentional procurement of the contract's breach, the lack of justification, and resulting damages).  To demonstrate the tort of interference with prospective business advantage, a plaintiff must prove:  (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.  *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225 (Nev. 1987); *see A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995) (noting that the tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into a business relation with another).

In response to Defendant St. Martin's Motion for Summary Judgment, Plaintiff Williamson argues that Defendant St. Martin took action that interfered with prospective business relationships.[2]  In support of his claim, Plaintiff Williamson specifically argues that Defendant St. Martin interfered with his ability to obtain additional breeding stock, citing his interrogatory responses statement that "St. Martin insured that Circle W Mastiffs would not be

---

[2] Plaintiff Williamson does not challenge Defendant St. Martin's argument that he has not presented evidence demonstrating that she intentionally procured the breach of an existing contract.  Therefore, insofar as Plaintiff Williamson originally made such a claim, the Court views the claim as abandoned.  *See, e.g.*, *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (affirming trial court's finding that the plaintiff's failure to properly respond to the arguments raised in a motion for summary judgment constituted an abandonment of those claims).

able to obtain breeding stock from the other AMBC breeders so that it could maintain and grow its business." (Pl.'s Mem. in Opp. at 12; Doc. 204-14). Plaintiff Williamson argues that Defendant St. Martin had actual knowledge of the prospective business relationships, that she had an intent to harm him by interfering with these prospective business relationships, there is no privilege or justification for Defendant St. Martin's conduct, and that he was harmed as a result of her conduct. However, aside from the above-quoted conclusory statement from his interrogatory responses, Plaintiff Williamson cites no evidence in support of his assertion that he has identified prospective business relationships of which Defendant St. Martin interfered. To the contrary, the evidence demonstrates that Plaintiff Williamson's assertion is baseless.

In particular, Plaintiff Williamson fails to show that Defendant St. Martin improperly caused other American Mastiff Breeders Council members not to enter into a business relationship with him. In fact, Plaintiff Williamson testified as follows on the issue of whether he was prevented from purchasing additional breeding dogs from other breeders:

Q.    And so would I be correct then in understanding that you only purchased three breeding dogs?

A.    That is correct.

Q.    Okay, and have you ever made any attempt to purchase any other breeding dogs?

A.    We did write to Fredericka Wagner I know on one occasion inquiring about purchasing another breeding dog back in I believe that was 2007 in the spring.

Q.    Okay did you contact anyone else at any time in attempt to acquire any other breeding stock?

A.    Only Fredericka Wagner.

Q.    And was she willing to sell you other breeding stock?

A.    At that time when we did contact her in April, I believe it was April of 2007, it was the spring of 2007, she was open to selling us breeding stock.

Q.    And did you purchase breeding stock from her?

A.    Did not.

22

Q.     Why not?

A.     We were – timing-wise it wasn't a good time for us, and then we also had read some posts that made us have some concerns about purchasing from her.  And so we, we chose not to.

Q.     Did you attempt to purchase breeding stock from anyone else?

A.     No, I did not.

Q.     At any time?

A.     No.

(Williamson Dep. at 13-14; Doc. 206-4).

Therefore, Plaintiff Williamson specifically testified that, in 2007, Wagner was willing to sell breeding stock to him, but that he declined to purchase the breeding stock at that time, and that he did not attempt to purchase additional breeding stock from any other American Mastiff breeder.  Consequently, Plaintiff Williamson's conclusory assertion that Defendant St. Martin interfered with his ability to obtain breeding stock is contrary to the evidence and fails to demonstrate a genuine issue of material fact.  Because Plaintiff Williamson cannot demonstrate all necessary elements of the tort of interference with a business relationship, Defendant St. Martin is entitled to summary judgment in her favor as to this claim.

### 3.     Defendant Pridmore's Motion for Summary Judgment

Defendant Pridmore moves for summary judgment in her favor with respect to Plaintiff Williamson's remaining claims against her, specifically the claims of defamation and tortious interference with a business relationship.  Defendant Pridmore argues that no genuine issue as to any material fact exists, and that she is entitled to judgment as a matter of law as to those claims.

Plaintiff Williamson argues that Defendant Pridmore made defamatory statements that are not privileged, and that he has established the necessary elements in support of his claim of tortious interference with business relations.  More particularly, in response to Defendant Pridmore's Motion for Summary Judgment, Plaintiff Williamson argues that there are four disputed material facts.  First, he argues that Defendant Pridmore incorrectly asserts that the

creator of the dog breed creates the breed standard, in view of the Complaint filed by Defendant Pridmore in Case No. 2:08-cv-431, which states that the breed standard for the American Mastiff dog breed is set by the American Mastiff Breeders Council.  Second, Plaintiff Williamson argues that while Defendant Pridmore disparaged his maskless dogs, it is undisputed that these dogs were direct descendants of pure-bred registered American Mastiffs.  Thus, Plaintiff Williamson argues that it would be incorrect to state that direct descendants of pure-bred registered American Mastiffs were not American Mastiffs according to the breed standard.  Third, Plaintiff Williamson argues that Defendant Pridmore wrongly asserts that she had no knowledge regarding any sanction imposed on him by the American Mastiff Breeders Council, and that sanctions were not actually imposed on him.  Fourth, Plaintiff Williamson argues that Defendant Pridmore incorrectly asserts that the American Mastiff Breeders Council's members formed a limited liability company as a result of Plaintiff Williamson threatening to sue the American Mastiff Breeders Council and its members.

For the following reasons, the Court finds that Plaintiff Williamson has failed to demonstrate a genuine issue of material fact as it relates to his remaining claims against Defendant Pridmore.

### a.     Defamation

Plaintiff Williamson's response to Defendant Pridmore's Motion for Summary Judgment is largely an unsubstantiated narrative discussion of the alleged misconduct Defendant Pridmore has taken against him.  There is little legal analysis supporting the response, and Plaintiff Williamson attempts to bolster his case by interjecting his own unsworn factual statements as part of his narrative discussion.  Plaintiff Williamson's response in opposition carries an overriding theme: Defendant Pridmore became upset with him after he declined to provide one of his dogs for breeding purposes, and thereafter "embarked on a campaign over many years to damage [him] and [his] breeding business."  (Pl.'s Mem. in Opp. at 9; Doc. 210).  Plaintiff Williamson alleges that numerous statements made by Defendant Pridmore were defamatory.

24

The allegedly defamatory communications can be categorized by the recipient:  Plaintiff Williamson, Defendant St. Martin, American Mastiffs website administrator Douglas Kent, persons reading posts on the American Mastiff website forum, and persons visiting Defendant Pridmore's website.  The Court first will outline the allegedly defamatory statements made by Defendant Pridmore, and it will then analyze whether evidence of these statements creates a triable issue as to Plaintiff's defamation claims against Defendant Pridmore.

### i. Alleged Defamatory Statements of Defendant Pridmore

Plaintiff alleges that emails that Defendant Pridmore sent to the email addresses alicer9832@yahoo.com and janhar5@yahoo.com contained defamatory statements.  On November 1, 2005, Defendant Pridmore sent an email to "Alice" at alicer9832@yahoo.com, stating in part: "WARNING, the [Nevada] breeders are one foot out the door.  They have breached contract and are [losing] their AMBC [approved] titled and [benefits]."  (Doc. 210-3, Ex. 11).  On November 4, 2005, Defendant Pridmore sent another email to the recipient at alicer9832@yahoo.com, this time stating in part: "The breeders in [Nevada] were AMBC [approved] but breached the AMBC contract by selling their puppies for a larger amount than the AMBC contract agreed on. [Therefore] they are [losing] their AMBC standing and all [privileges]."  (Doc. 210-3, Ex. 12).  On February 26, 2006, Defendant Pridmore sent an email to "Janice" at janhar5@yahoo.com, stating in part, "DON'T purchase from the [Nevada] breeders! They are currently being excused from the AMBC for [breach] of contract."  (Doc. 210-3, Ex. 13).  On March 1, 2006, Defendant sent another email to the janhar5@yahoo.com address, stating in part: "The issue that AMBC is in the [process] of insueing [sic] is really not a big deal but to someone like myself that prides on The AMBC and the by-laws that we have all agreed to. Rules are to [be] follow[ed] not broken.  I feel badly about speaking of another in this manor [sic] but they didn't stick to the rules of the AMBC.  They were selling puppies for more than they were [supposed] to which is breach of agreement.  They knew the rules but chose to go against them, which I very much resent. . . . if they do you right let me know so my mind can let

25

go the resentment that I hold." (Doc. 210-3, Ex. 14).

Plaintiff Williamson alleges that Defendant Pridmore made defamatory statements about him to Defendant St. Martin.  On October 17, 2007, Defendant Pridmore sent an email to Defendant St. Martin, stating the following:

> OK so As I told Fredericka this morning, (she has yet gotten back to me) I am Very angry and disappointed in the AMBC!  We have breeders out there breeding mutts!  Yes Mutt!  Circle W has misrepresented [our] breed horribly and mislead clients to believe that they own an American Mastiff.  If you go to Doug's site www.americanmastiff.org "new photos" at the bottom you will see a cute little puppy by the name of "Lucy" She looks like a pure bred Yellow Lab!  This is a product of Circle W and they are selling their mask less puppies as American Mastiffs!  This will effect us more than anything has ever effected us before.  We AMBC claim to have a very wonderful group of people representing our breed and that we all have and hold the same ideas for the AM's.  Very Very disappointed and embarrassed at this point!  This is not a new issue by any means and should have been taken care of 1 1/2 years ago!!!!!!  I am shaking mad!!!!!!!!

(Doc. 210-3, Ex. 17).  On November 14, 2007, Defendant Pridmore sent an email to Defendant St. Martin inquiring whether "Circle W is no [longer] AMBC [approved] due to lack of integrity of breed standard?"  Defendant Pridmore further stated, "Sooooooooo needs to be done or we could be in big trouble with the folks that have purchased their pups, and the families that are in the process and waiting for one of their puppies."  (Doc. 210-3, Ex. 19).

Plaintiff Williamson alleges that Defendant Pridmore made defamatory statements about him to the administrator of the American Mastiff website.  On October 16, 2007, Defendant Pridmore sent an email to Douglas Kent, the administrator of the website, www.americanmastiff.org, stating in part: "Hey between you and me at this point, [there] is a puppy on the site that is not an American Mastiff.  The puppy is a lab looking puppy, she is or looks like a yellow lab.  Being that this is a site for the American Mastiffs we should probably not mislead the blind.  American Mastiffs are fawn with black masks, apricot with black masks, and or brindle with black masks."  (Doc. 210-3, Ex. 15).  On January 7, 2008, Defendant Pridmore sent an email to Douglas Kent stating in part: "between you and I the specific breeder in this case is in the process of [losing] their AMBC recognition.  The AMBC is pulling everything together to [legally] pull their AMBC [approval]."  (Doc. 210-4, Ex. 22).

On January 6, 2008, Defendant Pridmore posted statements on the discussion forum on the website www.americanmastiff.org, and Plaintiff Williamson asserts that the statements on the forum were defamatory.  The statements are quoted in full above in reference to Plaintiff Williamson's claims against Defendant St. Martin, and therefore will not be restated.  To summarize, Defendant Pridmore's post on the forum expressed her view that a "maskless dog" should not be sold as an American Mastiff dog, and that engaging in such conduct would be misleading to the buyer of the maskless dog.

Finally, Plaintiff Williamson asserts that Defendant Pridmore made defamatory statements against him on her website.  In March 2008, Defendant Pridmore's website included the following statements: "The AMBC has voted in and officially recognized 12 Breeders for the American Mastiff.  If you are purchasing or looking into purchasing pure breed American Mastiff, only those breeders recognized by The American Mastiff Breeders [Council] will be able to sell you a pure breed AM, with original papers tracing back to Flying W Farm."  (Doc. 210-4, Ex. 23).

### ii.      Analysis

In analyzing the merits of Defendant Pridmore's Motion for Summary Judgment, as it relates to Plaintiff Williamson's defamation claims against Defendant Pridmore, the Court first will address the four allegedly disputed material facts set forth by Plaintiff Williamson in response to Defendant Pridmore's Motion for Summary Judgment.

Plaintiff Williamson argues that Defendant Pridmore's statement that the creator of the breed creates the breed standard was false considering her assertion in a pleading that the breed standard for American Mastiffs is set by the American Mastiff Breeders Council.  In essence, Plaintiff Williamson is arguing that Defendant Pridmore was precluded from making the assertion regarding the creator of the breed due to her subsequent allegation.  This argument is unavailing.  The evidence demonstrates that Fredericka Wagner created the breed and the breed standard, and that the American Mastiff Breeders Council subsequently formally approved the

27

breed standard. Plaintiff Williamson fails to cite any evidence demonstrating that the dark mask attribute was ever not part of the breed standard for the American Mastiff dog breed. Because Plaintiff Williamson cannot show that Defendant Pridmore's statement was false, there is no genuine dispute as to this issue.

Plaintiff Williamson also argues that it was improper for Defendant Pridmore to state that a direct descendant of pure-bred registered American Mastiffs were not American Mastiffs according to the breed standard. This argument is unpersuasive, however, because Defendant Pridmore's statements about the maskless dogs demonstrated her opinion regarding the significance of the omission of the dark mask. How to best identify a maskless offspring of two registered American Mastiffs is ultimately dependent on the significance placed on that omission, which necessarily lends itself to competing, albeit both reasonable, views on proper classification or characterization. Thus, evidence of Defendant Pridmore's statements reflecting her view on the significance of the dark mask on an American Mastiff does not create a genuine issue of material fact.

According to Plaintiff Williamson, evidence demonstrates that Defendant Pridmore incorrectly asserts that the American Mastiff Breeders Council formed an LLC in response to him threatening to sue. In support, Plaintiff Williamson contends that, even though his attorney did send a demand letter in April 2008 to the members of the American Mastiff Breeders Council, the decision to form an LLC was made prior to the demand letter. Plaintiff Williamson argues that this evidence demonstrates a genuine issue of material fact precluding summary judgment in favor of Defendant Pridmore. But Plaintiff Williamson's argument regarding the formation of the LLC does not demonstrate a genuine issue of material fact because he fails to explain how any dispute over when the LLC was formed is pertinent to his pending claims against Defendant Pridmore. Similarly, Plaintiff Williamson argues that Defendant Pridmore wrongly asserts that she had no knowledge regarding any sanction imposed on him, but he fails to explain how Defendant Pridmore's knowledge regarding any sanction imposed on him is

pertinent to his claims against her.  For these reasons, Plaintiff Williamson's attempt to identify four disputed material facts is unavailing.

Moreover, based on the Court's own review of the allegedly defamatory statements made by Defendant Pridmore, it finds that none of the cited statements are actionable.  At first glance, it would appear that Defendant Pridmore's statements to "Alice" at alicer9832@yahoo.com, and "Janice" at janhar5@yahoo.com, were made to third persons.  The evidence demonstrates, however, that Plaintiff Williamson created the email addresses alicer9832@yahoo.com and janhar5@yahoo.com, and represented himself as "Alice" and "Janice," as a means to determine what Defendant Pridmore was saying to prospective American Mastiff dog buyers.  Thus, Defendant Pridmore's statements to "Alice" and "Janice" at those email addresses were actually only received by Plaintiff Williamson.  Because Defendant Pridmore's communications to Plaintiff Williamson were not published to a third person, those communications cannot form the basis of Plaintiff Williamson's defamation claims against her.  *See Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993) (noting that the publication of defamatory statements is an essential element of a claim for defamation, and that publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed); *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (noting that one of the elements of a defamation claim is unprivileged publication to a third person).

Even though the other cited statements of Defendant Pridmore were made to third parties, those communications were either not defamatory, or otherwise not actionable because they were privileged.  Plaintiff Williamson argues that Defendant Pridmore made defamatory statements to other members of the American Mastiff Breeders Council, to the administrator of the American Mastiff website, on the discussion forum on the American Mastiff website, and on her own advertising website.  The qualified privilege defense undoubtedly applies to Defendant Pridmore's statements to other members of the American Mastiff Breeders Council and the administrator of the American Mastiff website, as those statements were made during the course

29

of Defendant Pridmore's attempt to protect her interests in the integrity of the American Mastiff
dog breed.  Because those statements were entitled to qualified privilege, the issue resolves to
whether Plaintiff Williamson can demonstrate that the statements were made with "actual
malice."  Plaintiff Williamson cannot demonstrate actual malice because he cannot demonstrate
that Defendant Pridmore had knowledge that the statements were false or that she acted with
reckless disregard as to their truth or falsity.

Many of Defendant Pridmore's statements expressed her view as to the significance of
the dark mask on an American Mastiff dog. Defendant Pridmore expressed her opinion that
"maskless dogs" should not be sold as American Mastiffs and that maskless dogs are "mutts."
Defendant Pridmore stated that one of the dogs on the American Mastiff website, which has been
identified as one of Plaintiff Williamson's dogs named "Lucy," appeared to be a Labrador
because it lacked the dark mask.   Even though "Lucy" may have been represented as, and actual
was, a direct descendant of two pure-bred registered American Mastiffs, Defendant Pridmore
had no way of knowing that, aside from believing the statements of its breeder.  Thus, from
Defendant Pridmore's perspective, she conveyed the idea that because American Mastiff dogs
have dark masks, then a dog without a dark mask, does not appear to be an American Mastiff
dog.  Because Defendant Pridmore's allegedly defamatory statements were statements of
opinion, they are not actionable.

### b.    Tortious Interference with Business Relations

Plaintiff Williamson argues that he has presented evidence demonstrating the five
elements necessary to establish a claim of tortious interference with prospective business
relationships against Defendant Pridmore.  Specifically, Plaintiff Williamson asserts that he has
identified prospective business relationships of which Defendant Pridmore interfered, that
Defendant Pridmore had knowledge of the prospective business relationships, that Defendant
Pridmore had intent to harm him by preventing these prospective business relationships, that no
privilege or justification for Defendant Pridmore's conduct applies, and that he was harmed by

Defendant Pridmore's wrongful conduct.  Defendant Pridmore argues that she is entitled to summary judgment in her favor as to Plaintiff Williamson's tortious interference with business relations claim for multiple reasons, including because a number of the alleged wrongful acts forming the basis of the claim are privileged, because the other alleged wrongful acts do not rise to the level of intentional interference with business relationships as a matter of law, and because Plaintiff Williamson fails to identify any prospective business relationship of which Defendant Pridmore has interfered.

Plaintiff Williamson's tortious interference with prospective business relationships claim against Defendant Pridmore fails for the same reason the claim fails against Defendant St. Martin.  Plaintiff Williamson generally asserts that he was unable to purchase additional breeding stock from individual breeders of American Mastiff dogs because of the wrongful conduct of Defendants St. Martin and Pridmore, and therefore was unable to maintain and grow his business according to his business plan.  Contrary to this assertion, Plaintiff Williamson specifically testified that, in 2007, Wagner was willing to sell breeding stock to him, but that he declined to purchase the breeding stock at that time, and that he did not attempt to purchase additional breeding stock from any other American Mastiff breeder.  Consequently, Plaintiff Williamson's conclusory assertion that Defendant Pridmore interfered with his ability to obtain breeding stock is contrary to the evidence and fails to demonstrate a genuine issue of material fact.  Because Plaintiff Williamson cannot demonstrate all necessary elements of the tort of interference with a business relationship, Defendant Pridmore is entitled to summary judgment in her favor as to this claim, and it is unnecessary to address Defendant Pridmore's additional arguments relating to this claim.

IV.    **Williamsons' Motion for Summary Judgment**

In May 2012, the Williamsons moved for summary judgment as it relates to the Lanham Act claims against them in Case No. 2:08-cv-431.  The Williamsons argued in pertinent part that the Lanham Act plaintiffs cannot prove that they engaged in false advertising in connection with

the sale of their American Mastiff dogs.  The Williamsons assert that they have made no false or misleading statements, and that they disclosed to potential customers the fact that they were selling an American Mastiff without a dark or black mask.  Because of extensive and prolonged discovery issues, as well as efforts to mediate a settlement, briefing on the motion was held in abeyance until after the close of discovery, which occurred in December 2013.  The Court directed the Lanham Act plaintiffs to file any opposition to the May 2012 Motion for Summary Judgment by 51 days after the close of discovery.

None of the remaining Lanham Act plaintiffs filed an opposition to the May 2012 motion.  However, the Lanham Act plaintiffs previously did file an opposition to the Williamsons' Motion for Summary Judgment filed in January 2011.  Said opposition, which was filed on January 27, 2011, provides insight into the nature of the plaintiffs' Lanham Act claims against the Williamsons.  The Lanham Act plaintiffs clarified that they were alleging false advertising in violation of the Lanham Act.  They alleged that the Williamsons had falsely advertised that their maskless dogs are American Mastiffs, in violation of the Lanham Act.

Section 43(a)(1)(B) of the Lanham Act prohibits the use of false or misleading representations of fact which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1)(B).  To state a cause of action for false or misleading advertising, a plaintiff must establish (1) that the defendant has made false or misleading statements of fact concerning his own product or services or another's, (2) that statement actually or tends to deceive a substantial portion of the intended audience, (3) that statement is material, (4) that advertisements were introduced into interstate commerce, and (5) that there is some causal link between the challenged statements and harm to the plaintiff.  *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d 606, 613 (6th Cir. 1999).

To meet the first prong of the test set forth in *Podiatric Physicians*, the advertising must

convey a statement of fact, not of opinion.  *Id.*  "Liability arises if the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers."  *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735 (6th Cir. 2012) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).  When a statement is "literally false," a violation of the Lanham Act may be established without evidence that the statements actually misled consumers. *Podiatric Physicians*, 185 F.3d at 614.  In this scenario, "[a]ctual deception is presumed."  *Id.* However, "[w]here statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception."  *Id.*

Here, the Lanham Act plaintiffs generally allege that the Williamsons falsely advertised that their maskless dogs are American Mastiffs, in derogation of the breed standard.  Because there is no evidence that consumers were actually misled, the threshold issue is whether the Williamsons made statements that were literally false.  In responding to the Williamsons' January 2011 Motion for Summary Judgment, the Lanham Act plaintiffs argued that the Williamsons were improperly representing their dogs as American Mastiffs, when said dogs did not have a dark mask, which is required according to the breed standard.  The Williamsons are correct that the Lanham Act plaintiffs have not presented evidence demonstrating that the Williamsons have made a false statement of fact.

The Lanham Act plaintiffs have taken the position that because a maskless dog does not meet the breed standard, it cannot be advertised as an American Mastiff dog.  However, this assertion does not account for the fact that a breed standard defines the aspirational characteristics of a particular breed of dog.  It may be that a maskless dog cannot be registered as an American Mastiff because the omission is viewed as relatively significant, but that fact does not preclude an owner of such a dog, with American Mastiff parents, to represent the dog as being an offspring of purebred American Mastiff dogs.  Whether a dog may be considered an American Mastiff if it sufficiently aligns with the breeding standard, or whether it may be

33

considered an American Mastiff simply because it is the offspring of two registered American Mastiffs, seems to the Court to be a matter of semantics and philosophy.  Under such circumstances, advertising the offspring of two American Mastiffs as an American Mastiff is not demonstrably false.  Furthermore, it is undisputed that the Williamsons did not hide the fact that some of their dogs did not have a dark mask.  Therefore, the Court finds that the Williamsons have met their burden in support of their Motion for Summary Judgment, and that the Lanham Act plaintiffs have not demonstrated that there is a genuine issue of fact for trial.  For these reasons, the Court will grant the Williamsons' Motion for Summary Judgment.

## V.        Plaintiff Taylor's Amended Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff Sandy Taylor requests that this Court issue an order dismissing, with prejudice, her Complaint in Case No. 2:08-cv-431. Rule 41 governs the voluntary and involuntary dismissal of actions.  Rule 41(a)(2) provides that if the plaintiff's motion for voluntary dismissal is not filed before the defendant responds, or without the defendant's consent, then the action may be dismissed "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).  Because Defendants Circle W Mastiffs, Craig Williamson, and Jennifer Williamson responded to Plaintiff Taylor's Complaint in Case No. 2:08-cv-431, and because they did not provide consent for Plaintiff Taylor's requested dismissal, the dismissal must be by court order.

In August 2010, the Court dismissed some of the claims that Plaintiff Williamson asserted against Taylor in Case No. 2:09-cv-172.  In December 2013, the Court dismissed the remaining claims against Taylor, and, consequently, she was dismissed as a defendant in Case No. 2:09-cv-172.  Plaintiff Taylor represents to the Court that, in view of the judgment in her favor in Case No. 2:09-cv-172, she does not wish to proceed on her claims against Circle W Mastiffs, Craig Williamson, and Jennifer Williamson in Case No. 2:08-cv-431.  Plaintiff Taylor asserts that the Williamsons will not be prejudiced by a dismissal because they asserted no counterclaims against her.  The Williamsons have filed a response to the request for dismissal,

arguing that a dismissal, even with prejudice, is prejudicial because it will hinder their ability to pursue a claim for attorney's fees.  The Williamsons further note that Taylor filed her request for dismissal without timely responding to their Motion for Summary Judgment.

Because the Court has decided to grant the Williamsons' Motion for Summary Judgment, Taylor's request to voluntarily dismiss her claims is moot.

## VI.    Conclusion

For the foregoing reasons, the Court **OVERRULES** Plaintiffs Circle W Mastiffs, Craig Williamson, and Jennifer Williamson's Objections to Magistrate's Order (Doc. 211 in Case No. 2:09-cv-172); **GRANTS** the motions for summary judgment filed by Defendants Tammy Venkler, Diane St. Martin, and Cameran Pridmore (Docs. 187, 200, 203, and 205 in Case No. 2:09-cv-172); **GRANTS** the Williamsons' Motion for Summary Judgment (Doc. 133 in Case No. 2:08-cv-431); and **DENIES as moot** Plaintiff Sandy Taylor's Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(a)(2) (Docs. 219 and 221 in Case No. 2:08-cv-431).  Accordingly, final judgment shall be entered in favor of Defendants Venkler, St. Martin, and Pridmore, in Case No. 2:09-cv-172.  Additionally, final judgment shall be entered in favor of Circle W Mastiffs, Craig Williamson, and Jennifer Williamson in Case No. 2:08-cv-431.

Based on these rulings, the following claims and parties remain pending in Case No. 2:09-cv-172:  Craig Williamson's claims for defamation and intentional interference with a business relationship against Kevin Ware, Melanie Ware, American Mastiff Breeders Council, LLC, Sandy Berger, and Connie Hammond.  No party remaining in this matter is represented by counsel, which may explain why none of the remaining defendants filed a dispositive motion. Nonetheless, in order to help facilitate the expeditious final resolution of this litigation, the Court intends to set a definite date for trial as soon as possible.  Prior to setting a trial date, however, the Court will provide the Williamsons an opportunity to evaluate whether they intend to incur the considerable time and expense of prosecuting their remaining claims at a trial on the merits. Accordingly, the Court orders the Williamsons to advise the Court, within 21 days of the filing

of this Opinion and Order, as to whether they intend to continue to pursue any claim that remains pending. If the Williamsons intend to pursue any of the remaining claims, they shall provide an explanation as to how the remaining claims are substantively different than the defamation and tortious interference with a business relationship claims against other defendants that have been resolved by this decision. If the Williamsons timely indicate to the Court that they intend to pursue any or all of the remaining claims, and provide the required explanation distinguishing the remaining claims from the already dismissed claims, the remaining Defendants may file a response within 21 days of the Williamsons' filing. If the underlying bases of the remaining claims are not substantively distinguishable from the claims that have been resolved by this decision, the Court will grant judgment in favor of the remaining defendants for the reasons expressed herein. Moreover, the Court will construe a non-response by the Williamsons to this directive as an intent to abandon the remaining claims. If that occurs, the remaining claims will be dismissed and final judgment will be entered.

The Clerk shall remove Documents 187, 200, 203, 205, and 211 in Case No. 2:09-cv-172, and Documents 219 and 221 in Case No. 2:08-cv-431, from the Court's pending motions list.

The Clerk shall remove Case No. 2:08-cv-431 from the Court's pending cases list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

36